Sharon **SNIDER**, Plaintiff–Appellee,

v.

**CONSOLIDATION COAL COMPANY**, Defendant–Appellant.

No. 91–1314.

United States Court of Appeals, Seventh Circuit.

Argued May 22, 1992.

Decided Aug. 26, 1992.

Rehearing and Rehearing En Banc Denied Sept. 28, 1992.

John D. Lynn (argued), Michael J. Hoare, Hoare & Associates, St. Louis, Mo., for plaintiff-appellee.

Donald L. Metzger, Edwardsville, Ill., Thomas G. Bearden (argued), David D. Mattern, Bearden, Breckenridge, Knoten & Mattern, St. Louis, Mo., Lori M. Eddy, Consolidation Coal Co., Pittsburgh, Pa., for defendant-appellant.

Before BAUER, Chief Judge, MANION, Circuit Judge, and FLOYD R. GIBSON, Senior Circuit Judge.[1]

FLOYD R. GIBSON, Senior Circuit Judge.

Consolidation Coal Company (hereinafter "Consol") appeals the district court's judgment in favor of Sharon Snider on her Title VII claim, contending the trial court was estopped from believing Snider's testimony by virtue of a jury verdict on tort claims heard and disposed of in this proceeding. Consol also challenges the district court's award of front and back pay. We affirm.

## I. BACKGROUND

Beginning in July of 1979, Snider worked at a coal mine owned by Consol that is referred to as "Burning Star # 4" and is

---

1. The Honorable Floyd R. Gibson, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

located in Cutler, Illinois. In late 1979 or early 1980, Richard Delloma began working at the mine as its Assistant Superintendent; in January 1982, he was promoted to Superintendent. As the mine's superintendent, Delloma was the highest ranking company official on the premises, and he had authority over sixty salaried and 267 hourly employees. Seventeen of these employees were female.

In 1984, Snider and Delloma had some form of relationship, though they vehemently disagree about the nature of that relationship. According to Snider, Delloma began making unwanted advances in 1982. Snider alleges that on numerous occasions, Delloma expressed his desire to have sex with her, and promised her easier job assignments in return. When Snider declined, Delloma began assigning her more difficult work and refusing to approve her absences. In July 1984, Delloma threatened to fire Snider and tell her husband about her affairs with two other miners unless she agreed to sleep with him. Faced with these threats, Snider gave in to his demands. On one occasion in September 1984, at a time when both were working at the mine, Delloma allegedly physically forced Snider to perform oral sex. Consol fired Delloma in January 1985 for "sexual harassment and unacceptable relations with employees who worked directly for him."

Delloma's version of the facts, as indicated, is different from Snider's. He denies threatening or otherwise harassing Snider. He admits that they had sexual relations at his house, but insists their encounters were completely consensual. He also admits to having had sexual relationships with at least nine other female employees over whom he had supervisory control, but insists all these relationships were also consensual.

In September 1985, Snider attempted suicide by taking an overdose of heart medication. She was hospitalized for several days and obtained psychiatric care. In November, she attempted to return to work, but found the experience traumatizing. In April 1987, her doctor advised her not to return to work, and she began an indefinite sick leave that continues at this time.

In July 1986, Snider filed suit against Consol and Delloma, alleging sexual harassment under Title VII. and a variety of state-based tort claims. Snider dismissed some of the tort claims prior to trial; trial commenced in May 1989 on her claims for assault, battery, intentional infliction of emotional distress,[2] and negligent hiring/retention/supervision.[3] A jury was impaneled to decide the tort claims, while the court was to try the Title VII claim.

At trial, the two primary witnesses were Snider and Delloma; Snider set forth her allegations, and Delloma denied them. The remaining witnesses' testimony primarily[4] addressed the credibility of Snider and Delloma; in fact, the strategy of both defendants was to launch a full-scale assault on Snider. Without detailing all the arenas of attack, we note that the defense counsel focused much of their energies on emphasizing that Snider never complained about Delloma's activity to anyone, and that none of the other women Delloma supervised— including those he had dated and had sexual encounters with—ever raised allegations of sexual harassment. In their closing arguments, both defendants' attorneys focused on these facts in describing Snider as a "liar."

Snider attempted to elicit the testimony of Dr. Freada Klein, an expert who consults with and advises companies on the problems of sexual harassment in the workplace. Based on Snider's offer of

---

**2.** Both Delloma and Consol were defendants on these claims, as well as on the Title VII claim.

**3.** Only Consol was named as a defendant on this count.

**4.** We note that there was also testimony to indicate Delloma's supervisors had reason to know

he dated his female subordinates, that Delloma had been warned not to date his female subordinates, and that no record of this warning was contained in Delloma's personnel file. Snider's doctor also testified about Snider's physical and emotional condition and suggested that she should not work at the mine again.

proof, the court determined the probative value of Dr. Klein's testimony would be outweighed by the prejudicial effect it would have on the jury, and refused to allow the jury to hear Dr. Klein's testimony. However, with respect to the Title VII claim, the court concluded Dr. Klein's testimony was more relevant, and the risk of prejudice was diminished; therefore, the court heard Dr. Klein's testimony outside of the jury's presence.[5]

Dr. Klein was able to testify about sexual harassment in general, but she had not interviewed Delloma or Snider, nor had she examined the operations at Burning Star # 4 or any other component of Consol's operation.[6] Instead, she testified about the problems faced by women working in traditionally male-dominated industries (such as coal mining), as well as the unique problems presented by romances between supervisors and their subordinates. She stated that she did not believe dating relationships between supervisors and subordinates could be truly consensual and voluntary, but that in those cases when the relationship appeared truly voluntary, she advised the company to remove the subordinate employee from the supervisor's control with respect to business matters. She also explained that over 95% of the victims of nonconsensual relationships—whether sexual or merely social—did not complain or report the problem due to a fear of reprisal or loss of privacy.

The jury returned verdicts in favor of the defendants on all counts. Snider filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial based on several evidentiary points; among these was a claim that the court improperly barred Dr. Klein from testifying before the jury. The court reiterated that it relied on

Federal Rule of Evidence 403[7] to exclude Dr. Klein's testimony, and then stated that "[t]o the extent that plaintiff asserts that Klein's testimony would have served to bolster plaintiff's credibility, that claim is of no legal value." *Snider v. Consolidation Coal Co.*, No. 86–3462, slip op. at 4 (E.D.Ill. June 27, 1990) (memorandum and order denying j.n.o.v. and new trial).

The same day the district court denied Snider's motions for j.n.o.v. and new trial, it rendered its decision in favor of Snider and against Consol[8] on the Title VII claim. In so doing, the court made thirty specific factual findings, six of which were based exclusively on Dr. Klein's testimony. The court also stated that Snider's "reluctance to file a formal complaint against Delloma is consistent with the patterns exhibited by subordinate employees who are subjected to sexual harassment by their supervisors. The Court finds that although plaintiff did not file a union grievance or a formal EEOC complaint, the attention by Delloma was unwelcome and constituted sexual harassment." *Snider v. Consolidation Coal Co.*, No. 86–3462, slip op. at 12–13 (E.D.Ill. June 27, 1990) (memorandum and order on Title VII claim). The court awarded Snider front pay, back pay, interest, and attorney fees.

## II. DISCUSSION

### A. Judgment on the Title VII Claim

Consol argues the jury's verdicts in favor of the defendants on the tort claims are inconsistent with the judge's verdict in favor of Snider on the Title VII claim. Specifically, Consol contends the jury obviously disbelieved Snider; had the jury believed Snider, it could not have rendered judgments for the defendants. Consequently, the judge was barred from believing any of

---

5. Consol has not appealed the court's decision to admit Dr. Klein's testimony for purposes of the Title VII claim. Snider dismissed her appeal of the court's decision to exclude Dr. Klein's testimony from the jury-tried portion of this case.

6. We suspect this is the reason the court concluded the danger of undue prejudice outweighed the probative value of Dr. Klein's testimony.

7. Rule 403 states in pertinent part that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury,...."

8. The court concluded damages were not available against Delloma and therefore found in his favor on the Title VII claim; Snider does not appeal this decision.

Snider's testimony when deciding the outcome of the Title VII claim.

 When a lawsuit involves both legal and equitable claims, the legal claims must be decided by the jury before the court resolves the equitable claims. This ordering of events is required so that the judge's decision with respect to the equitable claims does not bind the jury's decisionmaking ability with regard to factual issues common to both the legal and equitable claims, thereby undermining the guarantees of the Seventh Amendment. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 334, 99 S.Ct. 645, 653, 58 L.Ed.2d 552 (1979). This ordering of events, designed to prevent the jury from being bound by the judge's factual findings, creates situations in which the judge may be bound by the jury's factual findings. Indeed, this court has held that when common issues are simultaneously tried to both a judge and a jury, the jury's findings with respect to those common issues are binding upon the judge. *E.g., Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1293–94 (7th Cir.1987); *Hunter v. Allis–Chalmers Corp., Engine Div.*, 797 F.2d 1417, 1421 (7th Cir.1986). This latter rule of law has been variously characterized as mandated either by the Seventh Amendment or by notions of collateral estoppel. *See McKnight v. General Motors Corp.*, 908 F.2d 104, 113 (7th Cir.1990) (recognizing and criticizing both bases for the rule), *cert. denied,* —— U.S. ——, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991). In its briefs, Consol has characterized its argument as resting on both principles, but at oral argument conceded the analysis would be the same whether we analyzed this case under the Seventh Amendment or collateral estoppel. We believe the rule that binds the judge to the jury's findings is grounded in collateral estoppel and not the Seventh Amendment, *Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821, 844 (7th Cir.1978), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979); *Florists Nationwide Tel. Delivery Network v. Florists Tel. De-livery Assoc.*, 371 F.2d 263, 270 (7th Cir. 1967), *cert. denied,* 387 U.S. 909, 87 S.Ct. 1686, 18 L.Ed.2d 627 (1967); *see also Kitchen v. Chippewa Valley Schools*, 825 F.2d 1004, 1014 (6th Cir.1987); *Garza v. City of Omaha*, 814 F.2d 553, 557 (8th Cir.1987), and therefore will apply traditional collateral estoppel principles.

 For purposes of this appeal, Snider has conceded that the issues in the legal and equitable claims were common, and that the jury's verdict is inconsistent with the judge's decision.[9] Nonetheless, collateral estoppel cannot be applied unless the party against whom it is to be applied had a "full and fair opportunity" to litigate the issue in the prior proceeding. *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) (quotation omitted). A party has not had the requisite full and fair opportunity if he or she was unable to present critical evidence in the initial proceeding. *Jack Faucett Assoc. v. American Tel. & Tel. Co.*, 744 F.2d 118, 126 (D.C.Cir.1984) (citing *Blonder–Tongue Laboratories v. University of Illinois Found.*, 402 U.S. 313, 333, 91 S.Ct. 1434, 1445, 28 L.Ed.2d 788 (1971)), *cert. denied,* 469 U.S. 1196, 105 S.Ct. 980, 83 L.Ed.2d 982 (1985); *see also Butler v. Stover Bros. Trucking Co.*, 546 F.2d 544, 551 (7th Cir. 1977) (collateral estoppel not applied because Dead Man Act barred crucial testimony in first proceeding).

 In the case at bar, crucial evidence was allowed in the Title VII hearing that was not (and could not be) presented to the jury; namely, Dr. Klein's testimony. The jury's verdict turned on one single issue: whether the jurors believed Snider's version of the events, or whether they believed Delloma's. Two of the key facts relied upon by the defendants' attorneys in attacking Snider's veracity were her failure to complain about Delloma's actions and the failure of any other subordinate who dated Delloma to complain about harassment. Dr. Klein's testimony addressed this

---

**9.** This opinion should not be construed as holding that the judge's decision was inconsistent with the jury's verdict. We merely accept this proposition for purposes of this appeal because Snider does not challenge it.

issue by making it clear that few victims of sexual harassment make a contemporaneous complaint, particularly if the harassment occurs in an occupation traditionally dominated by members of the opposite sex. While we cannot say for certain that the jury's verdict would have been different had it heard this evidence, we do not need to make such a determination; all that is necessary is that Dr. Klein's testimony went to a key issue in the case and was sufficient to support the judge's decision.

Consol alleges Dr. Klein's testimony cannot have made a difference because 1) she did not have knowledge about the parties, 2) she used an incorrect definition of sexual harassment, and 3) the trial judge, in rejecting Snider's motion for a new trial, held her testimony did not buttress Snider's credibility. We reject each of these contentions. First, Dr. Klein's expert testimony about the tendencies of victims of sexual harassment did not require specific knowledge about the parties. Experts routinely offer general testimony about their field of expertise without knowledge of the case at bar. Furthermore, Dr. Klein explicitly stated she had no knowledge about the parties, so we do not believe the trial judge was somehow deceived into thinking she was testifying specifically about Snider's complaints. Second, we do not believe Dr. Klein used an incorrect definition of sexual harassment. Consol points to Dr. Klein's testimony wherein she expressed her doubts as to whether a dating relationship between a supervisor and a subordinate could ever be consensual. Nonetheless, Dr. Klein went on to describe the advice she gave to companies when a true "office romance" developed. She also described sexual harassment in terms that are wholly consistent with the law. Finally, and perhaps most importantly, we note that Consol does not ask us to reverse the district court for applying the wrong legal standard;[10] consequently, there can be no claim of error over use of the wrong legal standard. Finally, we do not believe the district court held Dr. Klein's testimony failed to support Snider's credibility. If this contention were true, there would be no reason for the district court to detail Dr. Klein's testimony in its ruling on the Title VII claim. Moreover, we believe Consol has misconstrued the court's denial of Snider's motion for new trial. The court explained that Dr. Klein's testimony was withheld from the jury because its probative value was outweighed by the danger of undue prejudice. Snider contended Dr. Klein's testimony was necessary to support Snider's veracity; the district court characterized this argument as lacking *legal* effect. In other words, the court held the proffered need for Dr. Klein's testimony had no impact on the court's legal analysis under Rule 403; the court did *not* say the testimony was to be kept out of the jury trial because it did not buttress Snider's credibility. Because Dr. Klein's testimony was critical to an important issue in the case, but was excluded from the jury trial through no fault of the plaintiff,[11] the district court did not improperly render a decision contrary to the findings of the jury.

### B. Damages

Consol raises two arguments regarding the court's award of damages. It first argues no monetary award is justified by the facts of this case, and then argues front pay is not available under Title VII.

■ "Title VII only provides for equitable relief; a district court cannot award

---

**10.** Consol does complain about finding number thirty, in which the district court found "[i]n an employment situation where less than 10% of the employees are female; where there are no available complaint channels; where the individuals to whom the sexual attention is directed feel economically dependent; and where a dominant male supervisor has relationships with several of the female employees, those relationships would not qualify as truly voluntary or consensual." *Snider v. Consolidation Coal Co.,* No. 86–3462, slip op. at 7 (E.D.Ill. June 27, 1990) (memorandum and order on Title VII claim). However, this complaint is not urged as an independent ground justifying reversal. Moreover, this finding, filled as it is with specific factual references, falls far short of a holding that there can *never* be voluntary relationships between supervisors and subordinates.

**11.** Thus, if the district judge had allowed the jury to hear Dr. Klein's testimony, our decision would be different.

damages, either punitive or compensatory, to redress a violation of Title VII. Consequently, a district court may award back pay to a plaintiff only as an equitable remedy, i.e., if a plaintiff can demonstrate that the defendant discharged him or her, either actually or constructively." *Brooms v. Regal Tube Co.*, 881 F.2d 412, 423 (7th Cir. 1989) (citation omitted). Given the district court's findings in this case, we have no trouble concluding that the conduct to which Snider was subjected "would cause a reasonable employee in [Snider's] position to contemplate immediate departure" and that "a reasonable employee would have felt compelled to resign under the circumstances of this case." *Id.* This differentiates this case from *King v. Board of Regents of the Univ. of Wis. Sys.*, 898 F.2d 533 (7th Cir.1990), where the district court properly declined to award back pay as an equitable remedy because, though the plaintiff lost her job, "she did not prove that harassment caused the loss...." *Id.* at 537. In the case at bar, the district court's findings amount to a finding that Snider was constructively discharged, meaning the harassment did cause the loss of Snider's job; thus, the back pay award was permissible.

Consol also claims a monetary award was improper because Snider did not request reinstatement. However, the district court specifically found that "[u]nder the facts here presented, it would be neither practical nor reasonable to order reinstatement." *Snider v. Consolidation Coal Co.*, No. 86–3462, slip op. at 2 (E.D.Ill. Jan. 8, 1991) (memorandum and order granting plaintiff's motion to amend judgment). We have previously affirmed an award of back pay when the plaintiff proved (and the district court found) constructive discharge even though the plaintiff "did not allege constructive discharge in connection with her Title VII claim and did not ask for back pay, front pay, or prejudgment interest."

*Brooms*, 881 F.2d at 423. Based upon the above statement of the district court, and our determination that the proof and judicial findings in this case amounted to a finding of constructive discharge, we rely on *Brooms* to affirm the back pay award.

■ Finally, Consol argues equitable relief in the form of front pay is not available under Title VII. However, this argument was not presented to the district court,[12] nor does it appear in Consol's initial brief in this appeal. The argument was presented for the first time in Consol's reply brief. Generally, we will not consider an argument that was raised for the first time on appeal, and "[w]e will not consider an argument made for the first time in the appellant's reply brief." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir.1986). On this basis, we affirm the district court's award of front pay.[13]

## III. CONCLUSION

Because crucial evidence was presented to the judge but kept from the jury (in spite of the plaintiff's efforts), the judge's equitable determinations were not dictated by the jury's findings on the legal claims. We also hold Snider was entitled to the back pay award because no reasonable employee would have continued working for Consol under these circumstances. Finally, we affirm the front pay award because Consol effectively waived its objection that Title VII did not permit the award by failing to raise this argument before the district court.

AFFIRMED.

---

**12.** In fact, in Consol's memorandum opposing Snider's motion to amend the judgment to include front pay, Consol specifically referred to front pay as an equitable remedy that could be awarded in the discretion of the trial court. R. 272 at 4.

**13.** Thus, whether a district court may order front pay as part of the equitable relief permitted by Title VII remains an open question in this circuit. *See Fortino v. Quasar Co.*, 950 F.2d 389, 398 (7th Cir.1991).