Richard C. DELLOMA,
Plaintiff–Appellant,

v.

CONSOLIDATION COAL COMPANY, and Bobby Brown, individually and as President of Consolidation Coal Company, Defendants–Appellees.

No. 92–2107.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 8, 1993.

Decided June 14, 1993.

Ronald E. Osman, Sara L. Nierste, Michael W. Maurizio (argued), Osman & Associates, Dongola, IL, for plaintiff-appellant.

Thomas G. Bearden, Bradley J. Washburn (argued), Bearden, Breckenridge, Knoten & Mattern, St. Louis, MO, for defendants-appellees.

Before FLAUM and MANION, Circuit Judges, and MILLER, District Judge.[1]

FLAUM, Circuit Judge.

Richard Delloma was the Superintendent of Consolidation Coal Company's Burning Star # 4 Mine in southern Illinois from 1982 until he was fired in January of 1985. Among his duties at the mine, Delloma determined whether an employee's absence from work would be recorded as excused or unexcused. While acting as the Superintendent, Delloma engaged approximately one-third of the female employees he supervised at the mine in dating or other social relationships. One of those women, Sharon Snider, filed a lawsuit against Delloma and Consolidation Coal, alleging sexual harassment under Title VII and several tort claims including assault, battery, and intentional infliction of emotional distress. Among many allegations of un-

---

1. The Honorable Robert L. Miller, Jr., United States District Judge for the Northern District of Indiana, sitting by designation.

wanted sexual advances, Snider claimed that Delloma conditioned approval of her absences as excused on her agreement to have sex with him. The jury found for the defendants on the common law claims, but the district court ruled in Snider's favor on the Title VII claim against Consolidation Coal.

Meanwhile, Delloma attempted to find other employment in the mining industry. In the summer or fall of 1986, he spoke to Eugene Samples, the President and Chief Operating Officer for Arch Minerals and an old family friend. After a short interview, Delloma was convinced that he had a job. He met with Terry Sullivan, President of Arch Minerals of Illinois, as Samples directed. Within a week or two, Samples spoke on the telephone to Bobby Brown, President and Chief Operating Officer of Consolidation Coal. Samples asked why Delloma had been discharged and Brown responded to the effect that "[t]here were some record-keeping irregularities that may have been involved." On the basis of Brown's statement, Samples lost his favorable impression of Delloma. Sullivan, who may or may not have 'heard Brown's remark from Samples, did his own reference check on Delloma in the local coal mining community and, advised that Delloma was a "womanizer" and "boozehound," decided not to hire him. Delloma did not contact or hear from Samples again until the *Snider* jury verdict in 1989. Then he wrote Samples a letter stating that he had been exonerated, and Samples wrote a pleasant but noncommittal letter back to him.

Disgruntled by the turn of events and perhaps buoyed by the jury verdict in his favor, Delloma sued Snider, Brown, and Consolidation Coal. Subsequently part of the complaint was dismissed, leaving only claims of intentional interference with a prospective contractual relationship against Brown and Consolidation. The district court granted both defendants' motion for summary judgment. Delloma appeals.

We review de novo the district court's grant of summary judgment, drawing all reasonable inferences for the nonmovant. *Russo v. Health, Welfare & Pension Fund,* 984 F.2d 762, 765 (7th Cir.1993). Summary judgment is appropriate if the movant is entitled to judgment as a matter of law and the record shows no genuine issue of material fact. We will affirm on any basis supported by the record. *Klein v. Rush–Presbyterian–St. Luke's Medical Center,* 990 F.2d 279 (7th Cir.1993).

■ The issue presented for review by Delloma is whether the trial court erred in requiring him to show actual malice by the defendants if the defendants' actions were not privileged. Relying on an incorrect list of the elements of the tort provided and argued by both the plaintiff and the defendants, the district court granted summary judgment based on Delloma's inability to show malice. In Illinois, a plaintiff claiming tortious interference with a prospective economic relationship must allege malice only if the defendants' actions were privileged. *Fellhauer v. City of Geneva,* 142 Ill.2d 495, 154 Ill.Dec. 649, 657, 568 N.E.2d 870, 878 (1991); *Kuwik v. Starmark Star Mktg. & Admin.,* 232 Ill.App.3d 8, 173 Ill.Dec. 543, 547, 597 N.E.2d 251, 255 (2d Dist.1992) ("[A]ctual malice is not a relevant concern until the qualified privilege has been found to apply."). Therefore, the short answer is that to require the plaintiff to allege and show malice when the defendants' actions were not privileged is error. The resolution of this question is not dispositive, however, unless the defendants' conduct was not privileged. Our inquiry, under the appropriate legal standard, reaches two issues never addressed by the district court—conditional privilege[2] and truth as a defense.

■ The elements of tortious interference with a prospective economic advantage or a prospective contractual relationship are:

**2.** On appeal, Delloma argues for the first time that the defendants should be precluded from asserting conditional privilege because they failed to offer it as an affirmative defense in their answer. In the district court, Delloma responded to the defendants' claim of privilege and did not argue waiver. He has waived the claim that defendants cannot use privilege as an affirmative defense. *See Russo,* 984 F.2d at 769 ("We have long refused to consider arguments that were not presented to the district court in response to summary judgment motions.") (citations omitted).

1) the plaintiff's reasonable expectation of entering into a valid business relationship; 2) the defendant's knowledge of the plaintiff's expectancy; 3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from being fulfilled; and 4) damages to the plaintiff resulting from the defendant's interference. *Fellhauer*, 154 Ill.Dec. at 657, 568 N.E.2d at 878. If the defendant's interference is privileged, the plaintiff bears the burden of proving that the defendant's conduct was malicious. *Id.*, *(citing HPI Health Care v. Mount Vernon Hospital*, 131 Ill.2d 145, 137 Ill.Dec. 19, 24, 545 N.E.2d 672, 677 (1989)). In the context of a suit for tortious interference with a prospective economic relationship, the term "malicious" does not carry the ordinary meaning of vindictive or malevolent; it means intentionally and without justification. *Fellhauer*, 154 Ill.Dec. at 657, 568 N.E.2d at 878; *HPI Health Care*, 137 Ill.Dec. at 24, 545 N.E.2d at 677; *but see Philip I. Mappa Interests v. Kendle*, 196 Ill.App.3d 703, 143 Ill.Dec. 936, 939–40, 554 N.E.2d 1008, 1011–12 (1st Dist. 1990) (actual malice means a desire to annoy or harm).

■ Privilege exists if the defendant acted in good faith to protect an interest or uphold a duty. Also the defendant's statement must be limited in scope to that purpose, and must be made on a proper occasion, in a proper manner and to proper parties only. *Mittelman v. Witous*, 135 Ill.2d 220, 142 Ill.Dec. 232, 240, 552 N.E.2d 973, 981 (1989). Defendant Brown made the statement at issue in response to a direct inquiry by a prospective employer. Delloma argues that Brown had no interest or duty in responding to Samples. The Illinois caselaw dealing with former employer/employee situations is slim.[3] The clearest cases for privilege involve legal and fiduciary duties, like those of corporate officers to their corporation, *see HPI*, 137 Ill. Dec. at 24, 545 N.E.2d at 677, or of a mayor to his city, *see Fellhauer*, 154 Ill.Dec. at 658, 568 N.E.2d at 879.

An employer owes no apparent legal duty to any other employer. Brown had no legal obligation to respond to Samples. Illinois courts, however, have recognized some interest of former employers in disclosing limited information to prospective employers. *See, e.g., Roemer v. Zurich Insurance Co.*, 25 Ill.App.3d 606, 323 N.E.2d 582, 587 (1st Dist. 1975) (as former supervisor, defendant had "duty to respond in some manner" to inquiries made by placement agencies). In a libel case, the Illinois Supreme Court has found conditional privilege to apply to statements by a former employer to a potential mortgagor, because the subject matter "affected an important interest of the recipient" and the statements were "within generally accepted standards of decent conduct" and were "made in response to a request." *Zeinfeld v. Hayes Freight Lines, Inc.*, 41 Ill.2d 345, 348, 243 N.E.2d 217 (1968).

■ The Illinois courts have not interpreted the existence of a duty or interest narrowly. *See Miller v. Danville Elks Lodge 332, B.P.O.E.*, 211 Ill.App.3d 145, 155 Ill.Dec. 549, 554, 569 N.E.2d 1160, 1165 (4th Dist.1991) ("The interest . . . must not necessarily be a legal one, as it may be sufficient if the speaker has a good faith belief he or she has a moral or social duty to uphold.") (citation omitted). In addition, courts generally recognize more extensive privileges where the claim is merely for a loss of prospective advantage rather than an existing contract. *See* D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Torts 1011 (5th ed. 1984). Generally, a former employer who gives a negative reference to a prospective employer holds some qualified privilege against defamation suits. Restatement (Second) of Torts § 595, cmt. i (1977); *see also* Note, *Contracting around the Law of Defamation and Employment References*, 79 Va.L.Rev. 517, 523–26 (1993). By analogy, an employer should hold some privilege against tortious interference suits for limited statements in response to a direct request. We conclude, therefore, that an employer may invoke a

---

**3.** We note that the plaintiff's argument based on the Illinois statute restricting employers from divulging disciplinary actions to third parties was not raised in the district court and, thus, has been waived. We will consider it, however, in examining Illinois policy toward statements by former employers.

conditional privilege to respond to direct inquiries by prospective employers.[4]

Once a privilege is established, the plaintiff must prove that the defendant acted with malice. The defendant may abuse the privilege, by making unjustified statements, by excessive publication of statements, or by making statements in conflict with the interest which gave rise to the privilege. If the defendant knew the statements were false, he would be unjustified in making them. In a defamation context the plaintiff must prove that "the statement in question was made with knowledge of its falsity or in reckless disregard of whether it was false or not." *Mittelman,* 142 Ill.Dec. at 240, 552 N.E.2d at 981. The Illinois Supreme Court described the defamation and tortious interference claims as "analytically intertwined." *Id.,* at 246, 552 N.E.2d at 987. Although Delloma did not bring a claim for defamation, he argues that Brown's statement constitutes slander per se and characterizes the statement as an outright lie. In a sense, defamation is the underlying basis for his tortious interference claim. Most of the cases the plaintiff relied on involve defamatory statements. At oral argument, the plaintiff argued that, even if Brown's statement to Samples were privileged, it would be malicious and unjustified because he knew or should have known it was false.

Neither the tort of intentional interference with a prospective contractual relation nor the conditional privilege explicitly address the relevance of truthfulness by the interferer. Frequently, the cases depend on statements alleged to be false or defamatory. *See, e.g., Fellhauer,* 154 Ill.Dec. 649, 568 N.E.2d 870 (mayor allegedly made false statement about city employee to city council, resulting in discharge); *Mittelman,* 142 Ill.

Dec. 232, 552 N.E.2d 973 (partner allegedly made false statements about associate to board of directors; claims include libel and slander); *Starmark Star,* 173 Ill.Dec. 543, 597 N.E.2d 251 (insurer made false statements about chiropractor to state department of insurance); *see also George A. Fuller Co. v. Chicago College of Osteopathic Medicine,* 719 F.2d 1326, 1332 (7th Cir.1983) (no Illinois authority that truthful intimations about plaintiff could support claim of tortious interference with contractual relations). Moreover, permitting recovery for tortious interference based on truthful statements would seem to raise significant First Amendment problems. *See generally* Johnson, *Solicitation of Law Firm Clients by Departing Partners and Associates: Tort, Fiduciary, and Disciplinary Liability,* 50 U.Pitt.L.Rev. 1, 96–97 (1988) (including a comparison of Restatement (Second) of Torts § 772(a) (truthful information can be given with no liability) with Prosser and Keeton on Torts 979 (tortious interference does not necessarily involve falsehood)). While the Illinois courts have held that some false statements may be privileged, *see Mittelman,* 142 Ill. Dec. at 240, 552 N.E.2d at 981, we have found no Illinois case holding that true statements by a defendant with or without a privilege may be the basis for an action for tortious interference with a prospective contactual relation.

At oral argument, the plaintiff conceded that if Brown had made true statements in response to Samples' inquiry, he would have no case. Delloma has never argued that true statements by a former employer to a prospective employer are actionable. From the filing of his complaint through the argument in this appeal, he has proceeded on the theo-

---

4. There is evidence of a trend away from permitting employers to make negative statements to third parties about former employees. An Illinois statute that concerns an employer's disclosure of disciplinary actions requires written notice to the employee at the time of the disclosure, unless the employee has specifically waived written notice or the disclosure is ordered by a court or government agency. Ill.Rev.Stat. ch. 48 ¶ 2007 (1991). In order to make sense, the statute must intend to prohibit disclosure of actual disciplinary actions, meaning true statements by employers. Unfortunately, no Illinois court has

yet had an opportunity to apply this rule to a case. The statute does add credence to the view that former employers may not make even true unfavorable statements about employees, beyond expressing an opinion. *See, e.g., Roemer,* 323 N.E.2d at 587 (former supervisor may say "I would not want him working for me."). Still, without guidance from the Illinois courts on the applicability of this statute to tortious interference claims, we will follow the generally accepted rule that employers may hold a limited privilege.

ry that Brown made a false and slanderous statement. Certainly for a defendant with a conditional privilege, truthful statements in response to a direct inquiry are not an abuse of the privilege. Therefore, if Brown's statement was true, we will affirm the summary judgment.

■ In the sexual harassment lawsuit by Snider, which led to Delloma's termination, defendants prevailed on the common law claims, but the district court found Title VII violations. We recently affirmed. *Snider v. Consolidation Coal Co.,* 973 F.2d 555 (7th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 981, 122 L.Ed.2d 134 (1993).[5] Among the findings of fact were Delloma's alterations of work records based on Snider's capitulation to his sexual harassment. An internal investigation at Consolidation, prompted by the *Snider* lawsuit, apparently found no specific instances of improper alterations. When Brown made the statement, however, allegations were pending against Delloma for just such record changes, and there is no evidence that Brown was informed of any conclusion reached by Consolidation's internal investigators.

The evidence Delloma did present on the subject is inconclusive as to record irregularities. In Delloma's response to defendants' motion for summary judgment, he attached a copy of the Consolidation Coal Company record terminating his employment. The reason for termination is described as "sexual harrassment and unacceptable relations with employees who worked directly for him." R. 43. Also attached are excerpts from the deposition of a Consolidation employee, Philip Nicholson. He stated that his investigation "revealed no sex harassment." R. 43, Nicholson Dep. p. 58. When questioned about the employee records, Nicholson said that he did not remember seeing any irregularities. R. 43, N.Dep. p. 58. Later, when pressed about "irregularities", Nicholson added, "She had some excused days, as I recall it." R. 43, N.Dep. p. 96. Nicholson never affirmatively stated that there were no

record-keeping irregularities. He does, however, confirm Delloma's use of his discretionary authority as a supervisor to grant excused absences to ˙Sharon Snider, who worked for him and with whom he was having a sexual relationship. R. 43, N.Dep. p. 95. Indeed, Delloma himself admits changing Snider's records. R. 43, Delloma Dep. pp. 127, 129, 131. Delloma also presented evidence to the district court that supports Brown's lack of knowledge of any investigation results. Nicholson specifically named the individuals with whom he communicated the results of his investigation, neither of whom was Bobby Brown. R. 43, N.Dep. p. 36. There is no evidence in the record that Brown heard or read that the company found no improper record changes.

Delloma's alteration of records as part of his sexual harassment of Snider has been established, based upon the *Snider* trial court's Title VII factual findings and our affirmance of them. For the purposes of related litigation, the issue is settled: Delloma granted excused absences on the basis of conduct determined by the trial court in *Snider* to be sexual harassment. We decline to revisit the matter. Brown's statement to Samples is, therefore, not false, as the plaintiff argues. Brown allegedly said, in response to Samples' question about Delloma's discharge, "There were some record-keeping irregularities that may have been involved." That statement is supported by Snider's allegations of sex-related record keeping, Consolidation's termination record listing sexual harassment and inappropriate sexual relationships as the reason for firing Delloma, the *Snider* trial judge's factual finding that Delloma changed Snider's records according to her compliance with his demands for sex, and our affirmance of the Title VII ruling. It is a fair statement that Delloma's termination involved some record-keeping irregularities. Delloma was terminated for sexual harassment (or at least allegations of it) and improper relationships with female employees who worked directly for him. Part of the impropriety stems from Delloma's discretion-

---

**5.** The plaintiff noted in his brief that Consolidation appealed the district court's ruling in the *Snider* suit and that it cannot have the case interpreted both ways. That is true as far as it goes. Our affirmance in *Snider* notified both parties which way Consolidation could have it, which hurt it in *Snider* and helps it in this case.

ary authority over the female employees' records. His relationships compromised his, and therefore the company's, objectivity concerning appropriate reasons to grant excused absences. It follows that record-keeping irregularities were involved in the decision to fire him, even discounting Consolidation's sexual harassment reason and solely relying on the improper relationships reason.

Because Brown gave a truthful response to Samples' direct inquiry, he did not unjustifiably interfere with Delloma's expectancy. Therefore, summary judgment was properly granted to the defendants.

AFFIRMED.