In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1455

Zurich Insurance Company, doing business
as Zurich American Insurance Company,

Plaintiff-Appellee,

v.

Amcor Sunclipse North America,

Defendant-Appellant.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 1152--Rebecca R. Pallmeyer, Judge.


Argued January 17, 2001--Decided February 23, 2001



   Before Easterbrook, Evans, and Williams, Circuit
Judges.

   Easterbrook, Circuit Judge.  Sunclipse makes and
sells corrugated paper products. One line, which
it introduced in 1993, is coated with a graphite-
based conductive film that protects electronic
components from electrostatic discharge.
Sunclipse initially obtained its coating from
Century Container Corporation under a license
that provided, among other things: "SUNCLIPSE
agrees not to manufacture, distribute or sell any
corrugated box or other container using graphite
liner board purchased from any source other than
CENTURY during the term of this license." While
this license to use Century's "Centurion"
coatings was still in force, Sunclipse set out to
formulate its own conductive coating, which it
called "Corru-Shield" and began to use late in
1994. Century filed suit, accusing Sunclipse not
only of breaking its promise but also of
misappropriating Century's trade secrets.
According to Century's complaint, the
misappropriation took two forms. First, Sunclipse
hired Robert Vermillion as the leader of its
effort to develop its own conductive coating.
Vermillion, according to Century, had learned
some of Century's trade secrets in December 1993
while seeking employment. Second, Sunclipse sold
its "Corru-Shield" products to customers whose

identities and requirements Century had revealed as part of the arrangement that gave Sunclipse access to the "Centurion" coating.

More than two years after Century launched its suit, Sunclipse notified Zurich American Insurance Co., one of its insurers, and asked Zurich for defense and indemnity. Zurich replied with this suit under the diversity jurisdiction, seeking a declaration that the policy does not cover Century's claims. (Zurich issued a series of one-year policies, which are identical in all important ways. For simplicity, therefore, we refer to "the policy.") While Zurich's action was pending, Sunclipse paid Century $1 million to settle the underlying suit. It wants Zurich to reimburse it for this payment, plus the costs of defense. But the district court granted summary judgment to Zurich. 85 F. Supp. 2d 842 (N.D. Ill. 2000). It held that California law governs the dispute and that, as a result, Sunclipse's delay does not doom its position. Both sides now accept these aspects of the decision. The district court added that the policy does not cover the loss. This conclusion Sunclipse hotly contests on appeal.

The only coverage of the policy relevant to this case concerns "advertising injury," a term defined as:

injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

This language shows why the district court granted summary judgment to Zurich. How could sale of an existing product, to established customers, cause "advertising injury" just because the product has a different conductive coating? The circumstances that made Sunclipse's conduct objectionable to Century had nothing to do with "advertising."

The policy defines four categories of advertising injury: defamation, publication of information that invades a right of privacy, "[m]isappropriation of advertising ideas or style

of doing business", and "[i]nfringement of copyright, title or slogan." Sunclipse believes that misappropriation of customers is the same thing as misappropriation of advertising ideas and that any use of a rival's trade secrets is "[i]nfringement of . . . title", which has the same defect. Like most other states, California construes ambiguities in policies against insurers, and it requires insurers to put up a defense against any claim colorably within the policy. Still, there must first be an ambiguity, and like the district judge we don't see one, or indeed any plausible claim of coverage. The nub of Century's claim is that Sunclipse used an anti-static coating other than Century's on products sold to customers Century told it about. Century did not contend that Sunclipse had engaged in any kind of promotion other than person-to-person persuasion. Advertising is a subset of persuasion and refers to dissemination of prefabricated promotional material. Sunclipse's lawyers submitted an appellate brief and presented an oral argument in an effort to persuade three judges, but counsel did not engage in "advertising," and their disagreement with Zurich's lawyers in this court did not "misappropriate . . . advertising ideas". Nor did Sunclipse's use of the "Corru-Shield" coating "infringe" Century's copyrights or "title"; Century did not own any of Sunclipse's products, and Century certainly did not own the customers.

Recent years have witnessed a surge of claims that one or another breach of contract or business tort that to a normal reader has nothing to do with advertising nonetheless should be classified as "advertising injury" under policies similar to Zurich's. Interpreting the law of all three states in this circuit, and of several others too, we have held that advertising-injury clauses should be given an ordinary-language reading, the one the parties likely supposed they were achieving when negotiating this language. See, e.g., Western States Insurance Co. v. Wisconsin Wholesale Tire, Inc., 184 F.3d 699 (7th Cir. 1999); Erie Insurance Group v. Sear Corp., 102 F.3d 889 (7th Cir. 1996); Playboy Enterprises, Inc. v. St. Paul Fire & Marine Insurance Co., 769 F.2d 425, 428-30 (7th Cir. 1985). Cf. Curtis-Universal, Inc. v. Sheboygan Emergency Medical Services, Inc., 43 F.3d 1119 (7th Cir. 1994).

Sunclipse does not deny that, if the law of Illinois or Indiana or Wisconsin were applied to this case, then Zurich would prevail. Still, Sunclipse insists, California has taken a different road, concluding that even one-on-one selling efforts constitute "advertising". For this proposition it relies exclusively on two

decisions of federal district courts, Sentex Systems, Inc. v. Hartford Accident & Indemnity Co., 882 F. Supp. 930, 939-40 (C.D. Cal. 1995), affirmed on other grounds, 93 F.3d 578 (9th Cir. 1996); New Hampshire Insurance Co. v. Foxfire, Inc., 820 F. Supp. 489, 494 (N.D. Cal. 1993). These are weak support at best, and not only because they are federal rather than state decisions. (Most cases concerning advertising injury seem to arise between parties of diverse citizenship, at least one of which prefers federal court. The resulting paucity of state decisions has made ascertaining state law difficult.) The statement in Foxfire is dictum; the case concerned not a series of one-on-one solicitations but a letter sent to approximately 30 customers as a group. The district court's opinion in Sentex has negligible authority not only because decisions of district courts lack precedential (as opposed to persuasive) force, see Colby v. J.C. Penney Co., 811 F.2d 1119 (7th Cir. 1987), but also because the court of appeals went out of its way not to approve the language on which Sunclipse now relies, deciding the appeal on other grounds, and later disapproved some of Sentex's reasoning expressly. See Simply Fresh Fruit, Inc. v. Continental Insurance Co., 84 F.3d 1105, 1108 n.2 (9th Cir. 1996).

Since Sentex and Foxfire at least one California decision has implied that individual solicitations are not advertising. See Peerless Lighting Corp. v. American Motorists Insurance Co., 82 Cal. App. 4th 995, 98 Cal. Rptr. 2d 753 (1st Dist. 2000). Sunclipse rightly observes that Peerless Lighting is not dispositive, because it dealt with solicitation of a single customer, so it does not foreclose the possibility that California would deem a series of similar solicitations to be "advertising." 98 Cal. Rptr. at 764 n.11. But although Peerless Lighting does not scuttle Sunclipse's position, neither does it suggest that California will sail a lonely course, tacking away from the position of other states on the meaning of "advertising." No case decided by any state court in California supports Sunclipse's position. The best it can say is that apparently adverse decisions (there are cases in addition to Peerless Lighting) can be distinguished. Perhaps so, but that is not enough for us to conclude, when making a prediction under Erie about how the Supreme Court of California would handle this subject, that California would depart from the normal understanding of "advertising."

Nor do we think it likely that California would treat customer solicitation as "infringement of title". Once again Zurich has the benefit of the leading state case on the topic. Palmer v. Truck

Insurance Exchange, 21 Cal. 4th 1109, 988 P.2d 568 (1999), holds that solicitation of customers whose identity had been learned from another firm was not "infringement of title" under a policy similar to Zurich's. Sunclipse responds that Palmer dealt with the duty to indemnify rather than the broader duty to defend, and that the policies' language is not identical. The Supreme Court of California reserved decision on policies phrased differently, as Zurich's is. 988 P.2d at 575. True enough, but even if this means that California law is not conclusively against it, Sunclipse is bereft of any argument that California law supports it. Vendors do not have "title" in their customers, or their custom, so it would take a bold court indeed to say that a policy with this language covered solicitation of customers. "Infringement of . . . title" can't be understood without considering "copyright" and "slogan," the other two words in the coverage provision. Reading these words together implies that "infringement" means using someone else's words, so that "title" refers to names and related trademarks, following the pattern of the phrase "copyright infringement." To rule in Sunclipse's favor, a court would have to give both "infringement" and "title" unusual meanings, ripping them from the context that is the best guide to their meaning. No decision that has been cited to us suggests that California is prepared to take such liberties with the language.

Affirmed