In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1275

Lockwood International, B.V.
  and Lockwood Engineering, B.V.,

Plaintiffs,

and

North River Insurance Company and Fidelity
  and Guaranty Insurance Company,

Intervening Plaintiffs-Appellees,

v.

Volm Bag Company, Inc.,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 96 C 673--Rudolph T. Randa, Judge.

Argued June 5, 2001--Decided December 6, 2001


   Before Flaum, Chief Judge, and Posner and
Manion, Circuit Judges.

 Posner, Circuit Judge.  This diversity
suit, based on Wisconsin law, presents a
novel but potentially quite important
issue of insurance law: whether a
liability insurer, asked to defend (or
pay the defense costs in) a suit against
its insured that contains some claims
that are covered by the insurance policy
and others that are not, can limit its
responsibility to defend by paying the
plaintiff in the liability suit to
replead the covered claims as uncovered
claims.

   For simplicity we treat the case as a
three-cornered dispute among a single
plaintiff, Lockwood; a single intervenor,
North River, the insurance company; and a
single defendant, Volm. It began with
Lockwood, a foreign manufacturer of
machines for weighing and bagging
produce, suing Volm, which Lockwood had
appointed to be its exclusive North
American distributor. Lockwood's

complaint charged that Volm had secretly formed and funded a new company, Munter, staffed by former employees of Lockwood that Volm had lured to work for Munter. Having done so, the complaint continued, Volm stole Lockwood's intellectual property and manufactured machines that copied Lockwood's. To complete its infamy, Volm then-- by disparaging Lockwood and its products (even spreading false rumors about Lockwood's financial solidity), by soliciting purchases of Lockwood products and then substituting knock-offs of them manufactured by Munter, and by warning customers that Lockwood machines infringed a Volm patent (acquired by fraud, the complaint alleged)-- had induced customers for weighing and bagging machines to switch their orders from Lockwood's machines to Munter's. The complaint charged that these acts constituted breach of fiduciary duty, tortious interference with contract, unfair competition, and conspiracy. The suit is still pending.

 North River had issued a commercial general liability (CGL) policy to Lockwood. Under the heading "personal injury," the policy covers product and producer disparagement. Under the heading of "advertising injury," it covers (so far as bears on this case and does not duplicate "personal injury") misappropriation of "advertising ideas or style of doing business" or "infringement of copyright," provided the misappropriation or infringement occurs "in the course of advertising" the insured's products. Since the complaint expressly charged disparagement of Lockwood and its products, and strongly implied (especially in the bait and switch allegation) that Volm had appropriated Lockwood's "advertising ideas or style of doing business," North River agreed to handle Volm's defense. Had the case gone through to judgment or settlement in the usual way, North River would probably have borne the entire expense of conducting Volm's defense, e.g., School District of Shorewood v. Wausau Ins. Cos., 488 N.W.2d 82, 88 (Wis. 1992); Curtis-Universal, Inc. v. Sheboygan Emergency Medical Services, Inc., 43 F.3d 1119, 1122 (7th Cir. 1994) (Wisconsin law); United States v. Security Management Co., Inc., 96 F.3d 260, 268 (7th Cir. 1996) (same); Solo Cup Co. v. Federal Ins. Co., 619 F.2d 1178,

1183 (7th Cir. 1980); Allan D. Windt, Insurance Claims & Disputes sec. 4.12, pp. 199-200 (3d ed. 1995), although its duty of indemnifying Volm for any damages that it was determined through judgment or settlement to owe Lockwood would have been limited to so much of the judgment or settlement as was fairly allocable to the claims in Lockwood's suit that were covered by the policy. E.g., Valley Bancorporation v. Auto Owners Ins. Co., 569 N.W.2d 345, 349 (Wis. App. 1997); Employers Mutual Liability Ins. Co. v. Hendrix, 199 F.2d 53, 59 (4th Cir. 1952). The difference reflects the greater difficulty of apportioning defense costs than damages. E.g., Grube v. Daun, 496 N.W.2d 106, 122 (Wis. App. 1992); cf. Jeffrey W. Stempel, Law of Insurance Contract Disputes sec. 9.03[c], pp. 9-67 to 9-68 (2d ed. 2000). But the rationale of a rule often limits its scope, and does here: if defense costs are readily apportionable between the covered and the uncovered claims, the insurance company need pay only for the former. Buss v. Superior Court, 939 P.2d 766, 776 (Cal. 1997); SL Industries, Inc. v. American Motorists Ins. Co., 607 A.2d 1266, 1280 (N.J. 1992); Budd Co. v. Travelers Indemnity Co., 820 F.2d 787, 791 (6th Cir. 1987); Windt, supra, sec. 5.11, p. 323.

Four years into Lockwood's suit, North River paid Lockwood $1.5 million to file an amended complaint that would delete the covered claims. Lockwood agreed to credit that amount against any judgment it might obtain against Volm. Since the policy limit was only $1 million, the agreement (to which Volm was not a party) protected Volm up to the policy limit against having to pay any covered claims. With the agreement in hand, North River, which had already intervened in the litigation to obtain a declaration of its duties to the insured, asked the district court to rule that it had no further duty to defend or indemnify Volm, since the effect of the amended complaint was to eliminate any possible liability of Volm to pay the covered claims in Lockwood's original complaint. The district judge agreed and entered a partial final judgment against Volm, which was immediately appealable because it resolved the claim of one of the parties, namely North River. Fed. R. Civ. P. 54(b). Volm then appealed. It asks us to

rule that North River must continue to pay its defense costs notwithstanding the settlement between North River and Lockwood.

North River's lawyer acknowledged at argument--what is anyway obvious--that either he or other counsel for North River had gone over the amended complaint with Lockwood's counsel line by line to make sure that all insured claims had been deleted. In other words, the insurance company sat down with its insured's adversary to contrive a complaint that would eliminate any remaining contractual obligation of the insurance company to defend the insured. (We limit our attention to defense costs, ignoring indemnity, in view of the fact that North River's settlement agreement with Lockwood gave Volm more than the policy limit; thus only defense costs are at issue in this appeal.) It did this without consulting the insured or obtaining the latter's agreement. We have difficulty imagining a more conspicuous betrayal of the insurer's fiduciary duty to its insured than for its lawyers to plot with the insured's adversary a repleading that will enable the adversary to maximize his recovery of uninsured damages from the insured while stripping the insured of its right to a defense by the insurance company. The limits of coverage, whether limits on the amount to be indemnified under the policy or, as in the present case, on the type of claims covered by the policy, create a conflict of interest between insurer and insured. Mowry v. Badger State Mutual Casualty Co., 385 N.W.2d 171, 177-78 (Wis. 1986); Transport Ins. Co. v. Post Express Co., 138 F.3d 1189, 1192 (7th Cir. 1998);Charter Oak Fire Ins. Co. v. Color Converting Industries Co., 45 F.3d 1170, 1173 (7th Cir. 1995). The insurer yielded to the conflict, in effect paying its insured's adversary to eliminate the insured's remaining insurance coverage.

It is true as North River points out that if in the course of litigation the covered claims fall out of the case through settlement or otherwise, the insurer's duty to defend his insured ceases. E.g., Meadowbrook, Inc. v. Tower Ins. Co., 559 N.W.2d 411, 416 (Minn. 1997); Conway Chevrolet-Buick, Inc. v. Travelers Indemnity Co., 136 F.3d 210, 214-15 (1st Cir. 1998); North Bank v.

Cincinnati Ins. Cos., 125 F.3d 983, 986 (6th Cir. 1997). That is the easiest case for readily apportioning defense costs between covered and uncovered claims. Nor can the insured prevent the insurer from settling covered claims for an amount that protects the assured from having to pay anything on those claims out of his own pocket, merely because the settlement, by giving the insured all that he contracted for, will terminate the insurer's duty to defend the entire suit. Meadowbrook, Inc. v. Tower Ins. Co., supra, 559 N.W.2d at 417; Reller, Inc. v. Hartford Ins. Co., 765 So. 2d 87, 88 (Fla. App. 2000); Allstate Ins. Co. v. Mende, 575 N.Y.S.2d 520, 522 (App. Div. 1991). But North River did not merely settle covered claims; as part of the settlement it paid Lockwood to convert some of the covered claims to uncovered claims. That was not dealing in good faith with its insured.

An example may help make this clear. Suppose that a suit against the insured makes two claims, both covered by the defendant's liability insurance policy. The insurer could settle one claim for $1 million and both for $2 million, but $2 million is too high. Instead it says to the plaintiff, "I'll give you $1.5 million to settle the first claim if you'll agree to redraft the second so that it's an uncovered claim, which you can of course continue to press against my insured." The only purpose of such a deal would be to spare the insurance company the expense of defending against the second claim, even though it was a covered claim when filed and would have continued to be a covered claim had it not been for the insurer's bribe of the plaintiff.

The duty of good faith is read into every insurance contract, e.g., Danner v. Auto-Owners Ins., 629 N.W.2d 159, 171 (Wis. 2001); Teigen v. Jelco of Wisconsin, Inc., 367 N.W.2d 806, 810 (Wis. 1985), as it is into contracts generally, e.g., Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 215-17 (1985); Market Street Associates Ltd. Partnership v. Frey, 941 F.2d 588, 592, 594-95 (7th Cir. 1991), in order to prevent opportunistic behavior by the contracting party that has the whip hand. Bourget v. Government Employees Ins. Co., 456 F.2d 282, 285 (2d Cir. 1972) (Friendly, J.).

That was North River, which neither needed nor sought its insured's permission to settle with Lockwood and by doing so expose the insured to having to bear its own defense costs for the remainder of the litigation.

North River's maneuver is also defeated by the principle that the duty to defend depends on the facts alleged rather than on the pleader's legal theory. E.g., Sola Basic Industries, Inc. v. U.S. Fidelity & Guaranty Co., 280 N.W.2d 211, 213-14 (Wis. 1979); U.S. Fidelity & Guaranty Co. v. Wilkin Insulation Co., 578 N.E.2d 926, 930 (Ill. 1991). "[T]he insured is covered against particular conduct alleged against it regardless of the label placed on that conduct by the pleader." Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co., 260 F.3d 742, 745 (7th Cir. 2001). If Lockwood was alleging what was in fact personal injury or advertising injury within the meaning of the policy, the fact that, whether at North River's urging or otherwise, it redrafted its complaint to change the name of the tort it was charging Volm with, but retained the same factual allegations that had triggered North River's initial duty to defend, would be ineffective to terminate that duty. Id.; Prisco Serena Sturm Architects, Ltd. v. Liberty Mutual Ins. Co., 126 F.3d 886, 890 (7th Cir. 1997); Hurst-Rosche Engineers, Inc. v. Commercial Union Ins. Co., 51 F.3d 1336, 1344 (7th Cir. 1995); Curtis-Universal, Inc. v. Sheboygan Emergency Medical Services, Inc., supra, 43 F.3d at 1122.

North River and Lockwood were apparently mindful of this principle. Their agreement not only requires Lockwood to delete the specific claims in the original complaint that are covered by the insurance policy that North River had issued to Volm, such as disparagement, defamation, misappropriation of advertising ideas or style of doing business, and copyright infringement, plus several of the theories of liability asserted in its original complaint (the ones most likely to involve disparagement or solicitation), such as tortious interference and unfair competition, and thus likely to be covered by the policy that North River had issued to Volm; it also forbids Lockwood to "undertake to prove" at trial a number of specific

allegations, such as that Volm caused Lockwood's customers to believe that Lockwood products infringed Volm's patent. This effort to get around the principle that the insurer's duties to the insured are determined not by legal theories but by facts portends unbearable awkwardness in the forthcoming trial. Suppose that in an effort to prove its remaining theories of liability, such as breach of fiduciary duty, which disparagement and other excluded charges would bolster (especially since Lockwood is seeking punitive damages), Lockwood presents evidence in support of these charges at trial. Volm will be delighted, because the introduction of such evidence will trigger North River's duty of indemnity and defense. North River will therefore have to have a lawyer in the courtroom to object whenever Lockwood crosses the line into forbidden territory. Either that (and what will the jury make of it?) or North River will sit out the trial but later sue Lockwood for breach of the settlement agreement if by crossing the line Lockwood resurrects Volm's rights under North River's policy.

No case that has been cited to us or that our own research has uncovered authorizes so convoluted a mode of proceeding. To recapitulate: North River had every right to settle the claims that gave rise to its duty to defend in the first place--the covered claims and the potentially covered claims in Lockwood's suit--in order to avoid having to defend the claims in the same suit that were not actually or potentially covered. But that is not what North River did. The duty to defend turns on the facts alleged rather than on the theories pleaded; and even after its deal with North River, Lockwood was alleging facts that could well, depending on the course of trial, describe a covered claim. Thus North River did not leave behind only clearly uncovered claims when it tried to shuck off its contractual responsibility to pay for its insured's defense.

It is irrelevant that the trial may show that Lockwood's only meritorious claims against Volm are ones that are not within the scope of the policy. The duty to defend (and hence to reimburse for defense costs when the insurance company doesn't provide the lawyer for the insured) is broader than the duty to

indemnify. The reason goes beyond the practical difficulties, noted earlier, involved in apportioning defense costs between covered and uncovered claims. The duty is broader because it "is triggered by arguable, as opposed to actual, coverage." General Casualty Co. of Wisconsin v. Hills, 561 N.W.2d 718, 722 n. 11 (Wis. 1997); Red Arrow Products Co. v. Employers Ins. of Wausau, 607 N.W.2d 294, 298 (Wis. App. 2000). The insured needs a defense before he knows whether the claim that has been made against him is covered by the policy, assuming there is doubt on the question. If the duty to defend were no broader than the duty to indemnify, there would be the paradox that an insured exonerated after trial would have no claim against the insurance company for his defense costs, since the company would have no duty to indemnify him for a loss resulting from a judgment or settlement in the suit against the insured. The duty to defend must therefore be broader than the duty to indemnify, and so the fact that North River paid the policy's limit on indemnification does not exonerate it.

The judgment is reversed and the case remanded for further proceedings consistent with this opinion.

Reversed and Remanded.