In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-3487 & 00-3627

CHARTER OAK FIRE INSURANCE COMPANY,
a Connecticut Corporation,

Plaintiff-Appellant/
Cross-Appellee,

v.

HEDEEN & COMPANIES, C.V. HEDEEN'S FUN
FACTORY, C.V. HEDEEN'S FUN CITY, U.S.A., FUNMAKER,
CLEMENS V. HEDEEN, JR., AND PATTI JO HEDEEN,

Defendants-Appellees/
Cross-Appellants.

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 97-C-0037--John W. Reynolds, Judge.

ARGUED May 16, 2001--DECIDED February 4, 2002

   Before HARLINGTON WOOD, JR., COFFEY, and
WILLIAMS, Circuit Judges.

   HARLINGTON WOOD, JR., Circuit Judge.
These appeals arise out of a declaratory
judgment action filed by Charter Oak Fire
Insurance Company ("Charter Oak") against
Hedeen and Companies, Funmaker, C.V.
Hedeen's Fun City, U.S.A., C.V. Hedeen's
Fun Factory, Clemens V. Hedeen, Jr., and
Patti Jo Hedeen, who we will refer
tocollectively as "the Hedeens." The
district court granted summary judgment
in favor of the Hedeens, but refused to
award the full amount of damages the
Hedeens were seeking. The parties then
filed these timely cross-appeals. The
district court had jurisdiction pursuant
to 28 U.S.C. sec. 1332, and appellate
jurisdiction exists under 28 U.S.C. sec.
1291.

I.  BACKGROUND

   Clemens V. Hedeen, Jr. ("Hedeen") is a
toy inventor from Sturgeon Bay,
Wisconsin, who has established various
businesses the purposes of which are to
develop toys and market toy concepts to
toy manufacturers. Clemens Hedeen and

Patti Jo Hedeen are the general partners of Hedeen and Companies and Funmaker. Clemens Hedeen is the sole proprietor of both C.V. Hedeen's Fun City, U.S.A. and C.V. Hedeen's Fun Factory. Charter Oak entered into a series of commercial general liability insurance contracts with Hedeen International, C.V. Hedeen's Fun Factory and Those Characters from Wisconsin, and Clemens V. Hedeen, Jr. DBA as the named insureds. These policies, which we will refer to collectively as "the contract" because they are identical in all applicable ways, were effective between January 4, 1993 and January 4, 1997 and provided liability coverage for covered third-party claims of "property damage," "bodily injury," and "advertising injury."

In June 1986, Hedeen, through Funmaker, entered into a royalty agreement with Lewis Galoob Toys, Inc. ("Galoob"), a large manufacturer and retailer of toys. Under the agreement, Galoob agreed to pay royalties to Hedeen for the right to develop and market a line of miniature toy vehicles called "Micro Machines." In 1987, Galoob became the exclusive marketer of Micro Machines, and at that time, Galoob registered the "MICRO MACHINES" name and logo with the United States Patent and Trademark Office.

Micro Machines grew in popularity, ultimately becoming by some estimates a $700 million line of toys. Disputes arose between Hedeen and Galoob as to the scope of their royalty agreement, resulting in several supplemental royalty agreements. By May 1996, Galoob had paid Hedeen approximately $18.5 million in royalties for the Micro Machine line. The disputes between Galoob and Hedeen persisted throughout this royalty period. Hedeen claimed a right to royalties in new Micro Machine products that were developed from images licensed from third parties, including Star Wars, Star Trek, and Power Ranger lines of Micro Machines. Galoob asserted that these new products were outside the scope of the royalty agreements. In 1995, Hedeen began sending letters to Galoob asserting breach of contract with respect to the royalty agreements. On June 2, 1995, Galoob filed a declaratory judgment action in the United States District Court for the Northern District of California (the "Galoob lawsuit") against the Hedeens

based on the royalty agreements. In addition to the declaratory judgment, Galoob sought an injunction restraining the Hedeens from using the Micro Machines trademark.

Hedeen tendered the defense of the original Galoob complaint to Charter Oak in June 1995. Charter Oak refused to defend, and Hedeen now concedes that Charter Oak did not have a duty to defend the original complaint. At the end of June 1995, the Hedeens filed their answer and a counterclaim against Galoob, seeking damages including additional royalties. Galoob filed a First Amended Complaint on September 3, 1996. The amended complaint alleged, among other things, as follows:

Since approximately 1993, the Hedeens have used Galoob's MICRO MACHINE and/or MICRO MACHINE LOGO trademarks in connection with their own business activities, despite having no right, title or interest therein. Specifically, the Hedeens, doing business under the name C.V. Hedeen's Fun Factory, have sent business letters under letterhead setting forth the words "MICRO MACHINE" inside a drawing of a toy train locomotive. The Hedeens' use of this letterhead is without permission or authority from Galoob, and has created actual confusion, mistake and deception among the commercial public, and is likely to cause further confusion, mistake and deception, as to the true and correct source, origin and sponsorship of the product line of toys and other goods sold under the MICRO MACHINE and MICRO MACHINE LOGO trademarks.
The amended complaint sought both an injunction and money damages for this alleged violation of the Lanham Act. Hedeen requested that Charter Oak provide a defense for the amended complaint, asserting that potential coverage existed under the "advertising injury" provision of the contract. Charter Oak declined.

In January 1997, Charter Oak filed the present lawsuit in the United States District Court for the Eastern District of Wisconsin, seeking a declaratory judgment that it was not required to provide a defense in the Galoob lawsuit. The Hedeens filed a counterclaim, seeking a declaratory judgment in their favor as well as their costs and fees incurred in

the Galoob lawsuit and in the Wisconsin action./1 On cross-motions for summary judgment, the district court concluded that Charter Oak was required to defend against Galoob's First Amended Complaint and granted declaratory judgment in favor of the Hedeens. The parties then began discovery and briefing to determine the Hedeens' fees and expenses. In December 1999, the district judge appointed a special master pursuant to Fed. R. Civ. P. 53 to review the parties' submissions.

The special master filed her recommendation on May 10, 2000, concluding that the Hedeens should recover $143,419.27 plus interest for their fees and expenses in Charter Oak's declaratory judgment action. Neither party objected to this amount, and the district court adopted the special master's recommendation. With respect to the Galoob case, the Hedeens sought $684,471.63 in fees and costs. The special master recommended that the Hedeens be awarded $537,133.22 plus interest. Both parties objected to this recommendation. The district court denied the Hedeens' objection and granted in part the objections raised by Charter Oak, reducing the award by $75,993.75 after disallowing a portion of the recommended fees for one of the Hedeens' attorneys, Robert Vizas. The district court denied Charter Oak's general objection that the recommended award improperly included fees and expenses incurred to pursue the Hedeens' royalty claims against Galoob and awarded fees and expenses relating to the Galoob lawsuit in the amount of $461,139.47 plus interest.

Charter Oak filed this timely appeal, arguing that the district court erred in concluding that trademark infringement was covered under the contract. In the alternative, Charter Oak contends that even if it is required to defend against actions for trademark infringement, the alleged infringement in the Galoob case did not occur in the course of the Hedeens' advertising and was, therefore, outside the contract. Finally, Charter Oak challenges the district court's fee award as it relates to the Galoob case, arguing that the majority of the fees awarded arose from activity relating not to the defense of the trademark infringement claim but rather to the

Hedeens' affirmative claims for additional royalties. The Hedeens filed a timely cross-appeal, challenging the district court's reduction of their fees and costs from the Galoob action.

## II.  ANALYSIS

We review the district court's grant of summary judgment de novo. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "As a federal court sitting in diversity, we apply state substantive law and federal procedural law." Id. (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Under Wisconsin law, "[a]n insurance carrier's duty to defend insured in a third-party suit is broader than its duty of indemnification and is predicated on allegations in a complaint which, if proved, would give rise to recovery under the terms and conditions of the insurance policy." Elliott v. Donahue, 485 N.W.2d 403, 407 (Wis. 1992). "The duty to defend is broader than the duty to indemnify, because the duty to defend is triggered by arguable, as opposed to actual, coverage." General Cas. Co. of Wis. v. Hills, 561 N.W.2d 718, 722 n.11 (Wis. 1997). "In determining an insurer's duty to defend, we apply the factual allegations present in the complaint to the terms of the disputed insurance policy. We liberally construe those allegations and assume all reasonable inferences." Doyle v. Engelke, 580 N.W.2d 245, 248 (Wis. 1998). "Any doubt as to the existence of the duty to defend must be resolved in favor of the insured." Wausau Tile, Inc. v. County Concrete Corp., 593 N.W.2d 445, 459 (Wis. 1999). As we have recognized, under Wisconsin law, "[w]hat is important is not the legal label that the plaintiff attaches to the defendant's (that is the insured's) conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers." Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc., 43 F.3d 1119, 1122 (7th Cir. 1994) (citing cases).

The "advertising injury" provision of the contract provided, "We will pay those sums that the insured becomes legally obligated to pay as damages because of personal injury or advertising injury to which this coverage applies. We will have

the right and duty to defend any suit seeking those damages." The contract went on to state, "This insurance applies to: . . . 'Advertising injury' caused by an offense committed in the course of advertising your goods, products or services" and defined "adverting injury" to include injury arising out of the "[m]isappropriation of advertising ideas or style of doing business" and "[i]nfringement of copyright, title or slogan."

Charter Oak first contends that trademark infringement is not a covered offense under the contract because the contract definition of "advertising injury" does not expressly reference trademark infringement, one of "the oldest and best known intellectual property offenses."[2] Charter Oak argues that the specific inclusion of "infringement of copyright" in the list of advertising injuries leads to the conclusion that the absence of an express reference to "trademark infringement" means that trademark infringement is not covered under the contract. However, the contract also references "infringement of . . . title or slogan," conduct which is not a distinct, recognized offense. As we recognized in interpreting identical language in Curtis-Universal, infringement of title "presumably" involves titles "of books, songs, products, services, and so forth" and is not clearly limited, as Charter Oak asserts, to the infringement of a non-copyrightable title of a creative work. See Curtis-Universal, 43 F.3d at 1124. In Zurich Insurance Company v. Amcor Sunclipse North America, 241 F.3d 605, 608 (7th Cir. 2001) ("Amcor Sunclipse"), in analyzing the word "title" in the phrase "infringement of copyright, title or slogan," we held that "[r]eading these words together implies that 'infringement' means using someone else's words, so that 'title' refers to names and related trademarks, following the phrase 'copyright infringement.'"

In ShoLodge, Inc. v. Travelers Indemnity Company of Illinois, 168 F.3d 256, 259-60 (6th Cir. 1999), cited by Charter Oak, the Sixth Circuit interpreted the word "title" in the phrase "infringement of copyright, title, or slogan" as unambiguously referring only "to the non-copyrightable title of a book, film, or

other literary or artistic work." The Eighth Circuit adopted the ShoLodge court's reasoning in Callas Enterprises, Inc. v. The Travelers Indemnity Company of America, 193 F.3d 952, 956-57 (8th Cir. 1999). However, building on the comments in Amcor Sunclipse, 241 F.3d at 608, and Curtis-Universal, 43 F.3d at 1124, we find that the term "infringement of . . . title" as used in the contract is broad enough to encompass claims of trademark infringement as alleged in the amended Galoob complaint, and reject the contrary holdings of ShoLodge and Callas. We, therefore, need not address the applicability of the "misappropriation of advertising ideas or style of doing business" provision of the contract, and we turn our attention to an analysis of whether the injury as alleged was committed in the course of advertising the Hedeens' goods, products, or services as required for coverage under the contract.

The amended Galoob complaint alleged that the Hedeens sent "business letters" on letterhead which included the Mirco Machines trademark and that this practice "created actual confusion, mistake and deception among the commercial public" and resulted in "unlawful profits" for the Hedeens. Under the contract, in order for the advertising injury provision to apply, the alleged offense must have been "committed in the course of advertising [the Hedeens'] goods, products or services," an element which Charter Oak contends is missing in the present case. The contract does not define "advertising," however, the Wisconsin Supreme Court has recognized the dictionary definition of "advertise" to be "'[t]o call the attention of the public to a product or business; . . . to proclaim the qualities or advantages of (a product or business) so as to increase sales'" and "'to call public attention to esp. by emphasizing desirable qualities so as to arouse a desire to buy or patronize.'" Atlantic Mut. Ins. Co. v. Badger Med. Supply Co., 528 N.W.2d 486, 490 (Wis. 1995) (citations omitted). Charter Oak cites Amcor Sunclipse, 241 F.3d at 607-08, for the proposition that a series of one-on-one customer solicitations does not constitute "advertising" under the "advertising injury" provision of the contract. The allegations of the Galoob complaint, however, are broader than the

facts in Amcor Sunclipse which involved the "sale of an existing product, to established customers." Id. at 607. In Western States Insurance Company v. Wisconsin Wholesale Tire, Inc., 184 F.3d 699, 702-03 (7th Cir. 1999), cited in the Amcor Sunclipse case, this court noted the difference between "advertising" and "marketing" and recognized that Wisconsin courts give "'advertising injury' clauses an ordinary-language reading." The conduct alleged in the amended Galoob complaint does not fall clearly under a "marketing" label. There is no mention of the number or identity of the recipients of the business letters. However, the complaint alleges that the use of the letterhead impacted "the commercial public" and resulted in "unlawful profits" for the Hedeens. Furthermore, the Hedeens are involved in a business with a very limited commercial audience. We find that under the allegations of the complaint, liberally construed, it is at least arguable that the trademark was used in the course of the Hedeens' advertising, triggering Charter Oak's duty to defend./3

Because Charter Oak breached its duty to defend, the Hedeens were entitled to a fee award. Both Charter Oak and the Hedeens challenge the amount at which the district court set that award. After the district court found Charter Oak had breached its duty to defend, the court set a schedule for briefing on the issue of damages. The Hedeens filed materials seeking all of their costs and expenses in the Galoob action from August 1996 until its conclusion. The Hedeens did not make any showing that the amount sought related to the defense of the Galoob suit rather than their counterclaims. On September 29, 1998, the district court issued an order stating that the Hedeens could recover only the fees and expenses relating to their defense and not to the counterclaims. If there was an overlap, the Hedeens were required to submit a detailed narrative explanation of how the fees related to both the defense and the counterclaims. Charter Oak then had the opportunity to make specific objections to the Hedeens' submissions.

After receiving voluminous submissions from both parties, the district court referred the matter to a special master. The special master reviewed the parties'

submissions line-by-line to determine whether the fees and expenses requested by the Hedeens related to the defense of the Galoob suit. On May 10, 2000, the special master issued a detailed, seventy-three page recommendation. As previously noted, the district court reduced the special master's recommended award in connection with the Galoob case by $75,993.75 after disallowing a portion of the recommended fees for Robert Vizas and awarded the Hedeens $461,139.47.

Charter Oak asserts that the district court's fee award as it relates to the Galoob case was erroneous because the majority of the fees awarded arose from activity relating not to the defense of the trademark infringement claim but rather to the Hedeens' affirmative claims for additional royalties. Charter Oak first contends that the district court employed the wrong legal standard in making its fee award. Charter Oak urges us to apply the offensive versus defensive posture analysis set out in Smart Style Industries, Inc. v. Pennsylvania General Insurance Company, 930 F.Supp. 159 (S.D.N.Y. 1996). The district court, however, recognized the correct standard under Wisconsin law, which holds that when an insurer breaches its duty to defend, the insured can recover damages which naturally flow from that breach, including costs and attorney's fees incurred by the insured in defending the suit. Towne Realty, Inc. v. Zurich Ins. Co., 548 N.W.2d 64, 68 (Wis. 1996) (quotations and citations omitted). "Only legal expenses incurred while 'defending the suit' against the insured are recoverable." Id. The Towne Realty court expressly held that defense of the suit does not extend to countersuits, noting "[a]t the risk of stating the obvious, a countersuit initiated by the insured cannot logically be a suit seeking damages from the insured." Id. at 69 (emphasis in original).

Charter Oak next contends that the fees and costs incurred in connection with the trademark infringement claim were at most $16,871.38. However, even if the complaint at issue contains other theories of liability not covered by the insurance policy, an insurer is obligated to defend the entire action if just one theory of liability appears to fall

within the coverage of the policy. School Dist. of Shorewood v. Wausau Ins. Cos., 488 N.W.2d 82, 88 (Wis. 1992). As we recently recognized in Lockwood International, B.V. v. Volm Bag Company, Inc., No. 01-1275, 2001 WL 1549239, at *1 (7th Cir. Dec. 6, 2001) (applying Wisconsin law), an insurer generally bears the entire expense of conducting its insured's defense even though its duty to indemnify is "limited to so much of the judgment or settlement as was fairly allocable to the claims . . . that were covered by the policy." This difference is based on the fact that it is more difficult to apportion defense costs than damages. Id. The district court applied the proper legal standard, allowing all fees incurred in defending the Galoob action, and we turn our analysis to the factual findings regarding whether certain amounts were recoverable under this standard.

"Because this case involves both a special master and a district judge, two standards of review are relevant: the standard the district judge applies to the special master's report and the standard we apply to the district court's opinion." Cook v. Neidert, 142 F.3d 1004, 1009 (7th Cir. 1998). A district court accepts a special master's findings of fact unless they are clearly erroneous. Id. at 1010 (citing Fed. R. Civ. P. 53(e)(2)). We review the district court's decision for an abuse of discretion. Id. at 1011. Charter Oak fails to show that the district court's decision characterizing the fees allowed as relating to the defense of the amended Galoob complaint was an abuse of discretion. The special master's finding, adopted by the district court, that the fees awarded related to the defense of the Galoob action was not clearly erroneous; in fact, we note that the special master's report was thorough, well-reasoned, and fully supported. Charter Oak's claim of error fails. Charter Oak further argues that the Hedeens cannot recover some specific amounts billed to them by outside counsel because these amounts relate to administrative and clerical tasks which should be considered overhead costs and not costs to be passed on to a client. Charter Oak objected to these amounts before the special master. The special master recommended that the district

court allow these challenged amounts. The special master recognized that in practice insurance companies often negotiate with law firms as to rates and matters for which the firm will be reimbursed. As a result of such negotiations, insurance companies are sometimes able to pay lower rates than private litigants might obtain. The special master believed that because Charter Oak declined to defend, it should not be allowed to second guess the Hedeens' payment arrangements, which the special master characterized as reasonable. The special master noted that the Hedeens were "cost conscious" and that the Hedeens had proven themselves to be capable of scrutinizing the legal bills they received to try to keep charges in line. The district court adopted the special master's recommendation. Once again, our review of the record shows that the district court did not abuse its discretion in adopting the recommendation./4

In their cross-appeal, the Hedeens challenge (1) the district court's reduction of fees for attorney Vizas and (2) the district court's adoption of the special master's recommendation that the Hedeens' "directly incurred expenses" be disallowed. With respect to Vizas' fees, the Hedeens sought reimbursement in the amount of $81,468.75 for fees paid to Robert Vizas, who was described as lead counsel for the litigation. According to the Hedeens, Vizas was to be heavily involved in strategy decisions and in trial, but not in the day-to-day preparation of the case. Vizas was not a partner at Legal Strategies Group ("LSG"), the law firm representing the Hedeens in the Galoob suit, rather he was referred to as "Of Counsel" to the firm. For the most part, Vizas billed his time to the Hedeens separately from LSG'sbilling, and the Hedeens paid Vizas directly.

With the exception of January and February 1997, the only documentation submitted in connection with Vizas' fees is the total number of hours billed per month without any descriptive detail. The special master, however, reviewed annotations to entries for other attorneys contained in bills from LSG which referenced activities which included Vizas and used these annotations

to patch together support for Vizas' fees. The special master stated that she believed there was sufficient evidence in the materials submitted to conclude that most of Vizas' time after September 1996 related to both the defense and the counterclaims. The district court disagreed. The district judge, reiterating that the Hedeens had the burden of proving the fees sought related to the defense of the Galoob suit, found that the Hedeens' submissions of hourly totals without clarification was insufficient to meet this burden and disallowed Vizas' fees in total, with the exception of the fees incurred in January and February 1997. In January and February 1997, in addition to the separate, direct bills from Vizas to the Hedeens, Vizas' fees were reflected on the LSG bills. The LSG bills provided annotations for these Vizas fees. The district court believed these annotations were sufficient to establish that a portion of the fees related to the defense of the Galoob suit. The district judge awarded $13,537.50 in fees for these two months, disallowing only four hours for which there were no specifically detailed annotations. The Hedeens ask that the special master's recommendation allowing the majority of Vizas' fees be reinstated; however, we agree with the district judge. The Hedeens had the burden of showing Vizas' fees related to the defense of the Galoob suit, and they failed to offer any justification or explanation for the majority of fees sought. The district court did not abuse its discretion in denying all fees for which no explanation was provided.

Turning to the "directly incurred expenses," the Hedeens argue that they are entitled to recover directly incurred, internal costs which they contend were incurred in an attempt to reduce the expense of the Galoob litigation by diverting work that would otherwise have been performed by outside personnel to in-house employees. The Hedeens sought $75,403.31 in directly incurred expenses, including salary for two in-house attorneys and an in-house accountant and expenses for travel, postage, copying, phone usage, Lexis, and subsistence for relocated employees. The special master believed that the Hedeens failed to establish with sufficient detail that these internal costs would

have been avoided had Charter Oak provided a defense, noting that "in a case of this magnitude an insured, even were its insurer providing it with a defense, would be likely to invest significant in-house resources in monitoring and helping in the preparation of the suit, above and beyond whatever obligations to cooperate in the defense the policy might impose." The district court adopted the special master's recommendation and disallowed the directly incurred expenses. Once again, the Hedeens fail to show that the district court abused its discretion in adopting the recommendation of the special master. The Hedeens had the burden of showing that these expenses would not have been incurred had Charter Oak defended the Galoob action. The conclusion that the Hedeens failed to meet this burden is not clearly erroneous.

## III. CONCLUSION

The decision of the district court is AFFIRMED.

FOOTNOTES

/1 The Galoob lawsuit was settled in 1997, with the Hedeens transferring all of their rights in Micro Machines to Galoob in exchange for $32 million.

/2 The term "trademark infringement" is not used in the contract, and therefore, it is not addressed under either the definition of an advertising injury or in the exclusions from coverage.

/3 Citing Elliott, 485 N.W.2d at 406, Charter Oak asserts in its reply brief "that an insurer does not breach its contractual duty to defend by denying coverage where the issue of coverage is fairly debatable, if the insurer provides coverage and a defense once the existence of coverage is established." However, as the Elliott court expressly recognized, "[a]n insurer may need to provide a defense to its insured when the separate trial on coverage does not precede the trial on liability and damages." Id. at 406 (internal quotations and citations omitted). See also Reid v. Benz, 629 N.W.2d 262, 267 (Wis. 2001).

/4 Charter Oak's opening brief includes a challenge to a portion of the fees awarded by the district court in connection with the Wisconsin declaratory judgment lawsuit. Charter Oak asserts that it should be liable for only $22,591.01, the amount of fees and costs incurred up to August 14, 1998,

the date on which the district court found the existence of a duty to defend. Charter Oak argues that the additional fees sought in connection with the Wisconsin lawsuit were not incurred in establishing coverage and are, therefore, not recoverable. Charter Oak raised this argument in the district court, but it did not specifically object to the special master's recommended fee award for the Wisconsin lawsuit. We need not consider whether Charter Oak's failure to object to the special master's fee determination constitutes a waiver, because this claim fails on its merits. The Wisconsin Supreme Court has recognized that when an insurer breaches its contractual duty to defend, the insurer is "liable to the insured for all damages that naturally flow from the breach." Newhouse v. Citizens Sec. Mut. Ins. Co., 501 N.W.2d 1, 6 (Wis. 1993). These damages "include: (1) the amount of the judgment or settlement against the insured plus interest; (2) costs and attorney fees incurred by the insured in defending the suit; and (3) any additional costs that the insured can show naturally resulted from the breach." Id. As the special master noted, this is an unusual case in that the Hedeens incurred over $100,000 in attorney's fees in proving up the attorney's fees from defending the Galoob action. However, the amount of the Galoob fee award was vigorously contested by Charter Oak. The additional fees incurred by the Hedeens in establishing the amount they were entitled to recover were not unreasonable and flow naturally from Charter Oak's breach of its duty to defend. The district court correctly refused to limit the Hedeens' recovery to fees and costs incurred up to August 14, 1998.